Steven T. Waterman (4164)
Megan K. Baker (15086)
**DORSEY & WHITNEY, LLP**
111 South Main Street, Suite 2100
Salt Lake City, Utah 84111
Telephone: (801) 933-7360
Facsimile: (801) 933-7373
Email: waterman.steven@dorsey.com
baker.megan@dorsey.com

*Attorneys for Plaintiff Transportation Alliance Bank Inc.*

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH, NORTHERN DIVISION**

| | |
|---|---|
| Transportation Alliance Bank Inc., d/b/a TAB Bank, a Utah corporation,<br><br>Plaintiff,<br><br>v.<br><br>Wolverine Haulers LLC, a Michigan limited liability company; Denise M. Kanaar, an individual, Aaron B. Allard, an individual, ADL Leasing, LLC, a Michigan limited liability company; and D and D Logistics L.L.C., a Michigan limited liability company,<br><br>Defendants. | **COMPLAINT**<br><br>Civil No. 1:26-cv-00144<br><br>Judge |

Plaintiff Transportation Alliance Bank Inc., d/b/a TAB Bank ("TAB Bank" or "Plaintiff"), for its complaint against Wolverine Haulers LLC, Denise M. Kanaar, Aaron B. Allard, ADL Leasing, LLC and D and D Logistics, L.L.C. (collectively, the "Defendants"), hereby alleges as follows:

## PARTIES, JURISDICTION, AND VENUE

1. Plaintiff Transportation Alliance Bank Inc., d/b/a TAB Bank is a Utah corporation, with its principal place of business in Ogden, Utah and conducting business in the State of Utah.

2. Defendant Wolverine Haulers LLC ("Wolverine") is a Michigan limited liability company. Defendant Wolverine has two members, Denise Kanaar and Aaron Allard, each member resides in Michigan. Therefore, for jurisdictional purposes, Wolverine is a citizen of Michigan.

3. Defendant Denise M. Kanaar ("Kanaar") is an individual residing in Michigan.

4. Defendant Aaron B. Allard ("Allard") is an individual residing in Michigan.

5. Defendant ADL Leasing, LLC ("ADL", and collectively with Kanaar and Allard, the "Guarantors") is a Michigan limited liability company. Upon information and belief, Defendant ADL has two members, Aaron Allard and Denise Kanaar, and each member resides in Michigan. Therefore, for jurisdictional purposes, ADL is a citizen of Michigan.

6. Defendant D and D Logistics, LLC ("D&D") is a Michigan limited liability company. Upon information and belief, the sole member of D&D is Samantha Sanborn, an individual residing in Michigan. Therefore, for jurisdictional purposes, D&D is a citizen of Michigan.

7. This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1332 as complete diversity of citizenship exists between TAB Bank, Wolverine, Allard, Kanaar, ADL, and D&D, and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

8. Defendants Wolverine, Allard, Kanaar, and ADL have consented to jurisdiction and venue in this Court under the terms of the Accounts Receivable Purchase and Security Agreement and Guaranties (as defined herein).

9. This Court has personal jurisdiction over D&D because D&D has engaged in business and commerce within the District of Utah and the Northern Division, and because D&D is an alter ego of Wolverine, and is subject to the specific personal jurisdiction of this Court.

## GENERAL ALLEGATIONS

### *The Purchase and Security Agreement*

10. On or about October 25, 2021, Wolverine entered into an Accounts Receivable Purchase and Security Agreement (the "AR Agreement") with TAB Bank, a true and correct copy of which is attached hereto as Exhibit 1.

11. On October 25, 2021, Allard and ADL (together with Kanaar, the "Guarantors") each executed a Continuing Guaranty and Waiver, pursuant to which they each unconditionally guaranteed payment and performance of Wolverine under the AR Agreement. True and correct copies of the Allard and ADL guaranties are attached hereto as Exhibit 2 and Exhibit 3, respectively.

12. As part of the AR Agreement, Wolverine granted TAB Bank a first priority security interest in all assets of Wolverine as more particularly described in the AR Agreement. *See* Ex. 1, ¶ 9.

13. In connection with the AR Agreement, TAB Bank sent each of Wolverine's account debtors a Notification Letter notifying the account debtors that all of Wolverine's present and future accounts had been assigned to TAB Bank.

14. On October 20, 2021, TAB Bank properly perfected its security interest in the Collateral by filing a UCC-1 Financing Statement with the Michigan Department of State, a true and correct copy of which is attached hereto as Exhibit 4.

15. On July 29, 2022, Wolverine executed that certain Amendment No. 01 to Accounts receivable Purchase and Security Agreement (the "First Amendment"), a copy of which is attached hereto as Exhibit 5.

16. On or about December 1, 2024, TAB was made aware of the death of Lawrence VanHaitsma, a prior owner of Wolverine and guarantor of the AR Agreement.

17. In connection with VanHaitsma's passing, TAB Bank was informed that the ownership of Wolverine changed, and that Allard and Kanaar became owners of Wolverine.

18. On December 16, 2024, Wolverine executed that certain Amendment No. 2 to Accounts Receivable Purchase and Security Agreement, a copy of which is attached hereto as Exhibit 6.

19. On December 16, 2024, Kanaar executed that certain Continuing Guaranty and Waiver, pursuant to which she unconditionally guaranteed payment and performance of Wolverine under the AR Agreement. A true and correct copy of which is attached hereto as Exhibit 7.

20. In connection with Amendment No. 2 of the AR Agreement, TAB Bank sent each of Wolverine's account debtors, including D&D, an updated Notification Letter notifying the account debtors that all of Wolverine's present and future accounts had been assigned to TAB Bank (the "Notification Letter"). A copy of this Notification Letter is attached hereto as Exhibit 8.

21. Pursuant to the AR Agreement, TAB Bank purchased certain accounts from Wolverine.

22. Pursuant to the AR Agreement, Wolverine was responsible to repay all amounts owing under the AR Agreement.

23. On February 5, 2025, Wolverine abruptly ceased operations.

24. Throughout February and March 2025, TAB Bank attempted to contact Wolverine regarding the outstanding amounts owing under the AR Agreement.

25. To date, Wolverine has failed to pay the amounts owing to TAB Bank under the AR Agreement as required.

26. TAB Bank fulfilled all of its obligations under the AR Agreement.

27. As of July 31, 2026, the amount due owing by Wolverine to TAB Bank under the AR Agreement is no less than $926,008.38, which includes $780,347.64 in principal, plus $139,974.25 in interest, plus $5,686.49 in administrative fees.

28. ADL, Allard, and Kanaar each executed a Continuing Guaranty and Waiver (each, a "Guaranty," and collectively, the "Guaranties"), pursuant to which they each "jointly and severally unconditionally guarantee[d] to TAB…the due payment in lawful money of the United States, and full prompt and faithful performance by [Wolverine] of all monies to be paid, and all things to be done…as well as the due payment and performance of all other debts and obligations which [Wolverine] may now or at any time hereafter owe to TAB." Exs. 2, 3, and 7, ¶ 1.

29. Guarantors failed to pay the amounts due and owing under the AR Agreement as required.

30. TAB Bank fulfilled all of its obligations under the Guaranties.

31. As of July 31, 2026, the amount owing by Guarantors to TAB Bank under the Guaranties is no less than $926,008.38.

*The D&D Accounts*

32. D&D purportedly acted as the broker for shipments transported by Wolverine.

33. As broker, D&D would be paid directly by the shipper for the shipments transported by Wolverine.

34. D&D would then be responsible to pay Wolverine amounts owed for transporting the shipments.

35. Wolverine issued invoices to D&D for amounts owing for transportation services.

36. Pursuant to the AR Agreement, TAB Bank purchased more than $1 million in accounts owed to Wolverine by D&D (collectively, the "D&D Accounts"). A schedule of the outstanding D&D Accounts is attached hereto as Exhibit 9.

37. Upon information and belief, D&D was owned by Kanaar until some time in late 2024.

38. Unbeknownst to TAB Bank, Kanaar was in a long term relationship with VanHaitsma, the prior owner of Wolverine, until Vanhaitsma's passing.

39. Upon information and belief, upon Vanhaitsma's passing, Kanaar was an owner of both D&D and Wolverine and controlled the operation of both D&D and Wolverine.

40. D&D and Wolverine operated at the same address and had the same telephone number.

41. Upon information and belief, D&D and Wolverine operated as alter-egos to one another and essentially operated as a single entity.

42. Upon information and belief, shortly after Wolverine ceased operations, Allard established a new trucking company, Silver Rush Trucking, LLC, at the same location previously occupied by Wolverine and D&D.

43. In December 2024, TAB Bank was informed that Denise Kanaar, the prior owner of D&D, had sold D&D to Samantha Sanborn.

44. Initially, D&D made payments to TAB Bank on the D&D Accounts as required.

45. However, on or about January 27, 2025, payments to TAB Bank from D&D were returned due to insufficient funds.

46. D&D ceased making payments on the D&D Accounts to TAB Bank.

47. TAB Bank contacted D&D throughout February and March, 2025, regarding the outstanding D&D Accounts.

48. In March, 2025, Ms. Sanborn agreed that D&D would make weekly payments of at least $25,000 to TAB Bank towards the D&D Accounts until they were paid in full.

49. D&D made varying weekly payments beginning April 1, 2025, and ceasing on or about September 15, 2025. These payments totaled $429,435.64.

50. After September 15, 2025, TAB Bank made several attempts to resolve the unpaid D&D Accounts with D&D, but later was informed that D&D had also ceased operations.

51. Upon information and belief, Wolverine, D&D and/or the Guarantors directed and caused the D&D Accounts to be improperly paid to Wolverine or a third party without the consent of TAB Bank in violation of the AR Agreement.

52. Upon information and belief, D&D and Wolverine improperly diverted funds owed to TAB Bank to D&D, Wolverine, and/or Guarantors.

53. Under MCL 440.9406 and Utah Code Ann. § 70A-9a-406, D&D was required to make all payments on the D&D Accounts to TAB Bank, and could not discharge its liabilities by making payment to Wolverine or any other third party.

54. As of July 31, 2026, the principal amount due to TAB Bank from D&D on the D&D Accounts is $1,139,599.43.[1]

**FIRST CLAIM FOR RELIEF**
**(Breach of AR Agreement - Wolverine)**

55. Plaintiff re-alleges and incorporates herein by reference each of the preceding allegations as if set forth completely herein.

56. Wolverine breached its contractual obligations under the AR Agreement by directing D&D to make payments to persons other than TAB Bank.

57. Wolverine breached its contractual obligations under the AR Agreement by failing to pay the amounts owing under the AR Agreement as required, and Wolverine is currently in default under the AR Agreement.

58. TAB fulfilled all its obligations under the AR Agreement.

59. As of July 31, 2026, the total indebtedness owed by Wolverine to TAB Bank under the AR Agreement is $926,008.38, with the further accrual of interest, costs, and attorneys' fees as allowed under the AR Agreement.

[1] This amount is net of the $429,435.64 payments that were previously received by TAB Bank.

60. Accordingly, TAB is entitled to judgment against Wolverine in an amount not less than $926,008.38, together with other accruing interest, costs and fees, including attorneys' fees, for its breach of the AR Agreement.

**SECOND CLAIM FOR RELIEF**
**(Breach of Guaranty – AR Agreement – Guarantors)**

61. TAB re-alleges and incorporates herein by reference each of the preceding allegations as if set forth completely herein.

62. Pursuant to the Guaranties, Guarantors unconditionally guaranteed payment of amounts owing under the AR Agreement.

63. Guarantors breached their contractual obligations under the Guaranties by failing to pay amounts due and owing under the AR Agreement.

64. Guarantors breached their contractual obligations under the Guaranties by improperly directing that the D&D Accounts be paid to Wolverine and/or the Guarantors.

65. TAB Bank has fulfilled its obligations under the Guaranties.

66. Wolverine is in default under the AR Agreement.

67. As of July 31, 2026, the total indebtedness owed to TAB Bank by Wolverine to TAB Bank under the AR Agreement is $926,008.38, with the further accrual of interest, costs, and attorneys' fees as allowed under the AR Agreement.

68. Accordingly, TAB Bank is entitled to judgment against Guarantors for breach of the Guaranties in an amount not less than $926,008.38, together with other accruing interest, costs and fees, including attorneys' fees.

**THIRD CLAIM FOR RELIEF**
**(Breach of Contract – D&D)**

69. TAB re-alleges and incorporates herein by reference each of the preceding allegations as if set forth completely herein.

70. Wolverine provided transportation services to D&D.

71. Wolverine issued invoices to D&D reflecting the amounts owed for the transportation services provided.

72. TAB Bank purchased the accounts of Wolverine pursuant to the AR Agreement, including the D&D Accounts.

73. TAB Bank has a properly perfected security interest in the D&D Accounts.

74. TAB Bank provided notice to D&D of the assignment of the D&D Accounts pursuant to Utah Code Ann. §70A-9a-406 and MCL 440.9406.

75. Upon receipt of the notice of assignment of the D&D Accounts to TAB Bank, D&D was required to remit payments to TAB Bank in order to discharge its obligations on the D&D Accounts.

76. D&D has failed to pay TAB Bank the amounts due and owing on the D&D Accounts.

77. As a result of D&D's failure to pay the amounts owing on the D&D Accounts, TAB Bank has been damaged in the amount of at least $1,139,599.43, plus fees, costs, and pre-judgment interest.

78. Accordingly, TAB Bank is entitled to judgement against D&D in an amount not less than $1,139,599.43, plus interest, costs, and fees, including attorneys' fees, continuing to accrue, for its failure to pay the D&D Accounts as required.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that judgment be entered against Defendants as follows:

A. On Plaintiff's First Claim for Relief, judgment against Wolverine in an amount not less than t $926,008.38 owing under the AR Agreement as of July 31, 2026, together with other and continuing interest, costs, and fees, including attorneys' fees, which continue to accrue, for its breach of the AR Agreement;

B. On Plaintiff's Second Claim for Relief, judgment against Guarantors, jointly and severally, in an amount not less than $926,008.38 owing under the Guaranties as of July 31, 2026, together with other and continuing interest, costs, and fees, including attorneys' fees, which continue to accrue, for their breach of the Guaranties;

C. On Plaintiff's Third Claim for Relief, judgment against D&D in an amount not less than $1,139,599.43, together with other and continuing interest, costs, and fees, including attorneys' fees, which continue to accrue; and

D. For judgment awarding Plaintiff such other and further relief as the Court deems just and equitable under the circumstances.

DATED this 27th day of August, 2026.

**DORSEY & WHITNEY LLP**

*/s/ Megan K Baker*
Steven T. Waterman
Megan K. Baker
*Attorneys for Transportation Alliance Bank Inc.*